**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| DAVID J. VINZANI,<br>Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 2:16-CV-62-JEM |
| NANCY A. BERRYHILL,<br>Acting Commissioner of the<br>Social Security Administration,<br>Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff David Vinzani on February 17, 2016, and Plaintiff's Opening Brief [DE 16], filed by Plaintiff on July 20, 2016. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On September 30, 2016, the Commissioner filed a response, and on October 14, 2016, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## I. Background

On November 11, 2012, Plaintiff filed an application for benefits alleging that he became disabled on May 26, 2011. Plaintiff's application was denied initially and upon reconsideration. On October 23, 2014, Administrative Law Judge ("ALJ") Romona Scales held a hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On March 27, 2015, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since May 26,

2011, the alleged onset date.

3. The claimant has severe impairments: degenerative disc disease of the lumbar spine and history of right total hip arthroplasty.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that he can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, can stand and/or walk about 6 hours and sit for about 6 hours in an 8-hour workday. The claimant can frequently balance, kneel, and crouch, and can occasionally stoop, crawl, and climb ramps and stairs. He must never climb ladders, ropes, or scaffolds and must avoid concentrated exposure to slippery, wet, or uneven surfaces and hazards such as dangerous moving machinery and unprotected heights.

6. The claimant is capable of performing past relevant work as a gate guard. This work does not require the performance of work-related activities precluded by the claimant's RFC.

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 26, 2011, through the date of this decision.

On December 14, 2015, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard or Review

The Social Security Act authorizes judicial review of the final decision of the Agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by

substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55

F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III. Analysis

Plaintiff argues that the ALJ erred in her conclusions regarding Plaintiff's mental impairments and in her findings about what jobs Plaintiff is capable of performing. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

### A. Mental Health

Plaintiff argues that the ALJ erred in her analysis of Plaintiff's mental impairments and failed to include any mental limitations in the RFC. The Commissioner argues that the ALJ's decision is supported by substantial evidence and she did not err in her analysis.

Plaintiff's treating psychiatrist, Dr. Shaaban, described Plaintiff's specific limitations because of his mental health, and opined that Plaintiff would be unable to work. The ALJ gave Dr. Shaaban's opinions little weight.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. §

404.1527(d)(2)); *see also Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96–5p, 1996 WL 374183, at *5 (July 2, 1996)) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it."); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision.").

In this case, Dr. Shaaban, Plaintiff's treating psychiatrist, completed a medical assessment of Plaintiff's ability to do work-related activities on October 20, 2014. He indicated that Plaintiff was extremely limited in his mental and task-related abilities, and opined that he "is unable to work." The ALJ gave "little weight" this medical source statement because the psychiatrist's "own clinical findings do not support such severe limitations" and because notes indicate that Plaintiff made progress in group therapy. AR 26. The ALJ also notes that "Dr. Shaaban's own records indicate the claimant's medication was working well, without side-effects." AR 25. There are several aspects of this analysis that demonstrate a lack of understanding of mental health treatment, an inability to follow the Agency's requirements for weighing the opinion of a treating psychiatrist, and a failure of logic.

The ALJ considered the psychiatrist's findings inconsistent with his clinical findings, and gave a few examples of the supposed inconsistencies. The ALJ repeatedly emphasizes Plaintiff's ability to participate in group therapy treatment multiple times a week and his ability to occasionally engage in leisure activities such as art projects, puzzles, and board games as reasons to disregard his

psychiatrist's report of limitations and find Plaintiff able to sustain full-time work. Leaving aside the fact that attendance in group therapy more than once a week would presumably limit Plaintiff's ability to be present in job full time for eight or more days per month, the ALJ has failed to draw a logical bridge between reports that Plaintiff can play simple childhood games such as Bingo and Yahtzee, AR 24, with the conclusion that he is able to concentrate at a full time job, or even with a conclusion that the Plaintiff is less limited than the treating psychiatrist has asserted. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as []he would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."); *see also Punzio*, 630 F.3d at 712 (explaining that a plaintiff's ability to complete activities of daily living does not mean that she can manage the requirements of the workplace).

The ALJ also seems to be conflating treatment notes indicating improvement and lack of medication side effects as indicating an ability to work. *Punzio*, 630 F.3d at 710 ("[B]y cherry-picking [the treating doctor]'s file to locate a single treatment note that purportedly undermines her overall assessment of [the plaintiff]'s functional limitations, the ALJ demonstrated a fundamental, but regrettably all-too-common, misunderstanding of mental illness.") (listing cases); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (reasoning that although a plaintiff actively participates in group therapy and is "heavily medicated" to the point where she could " cope with the challenges of daily living, and . . . work on some days" does not allow the ALJ to disregard treating physicians' opinions that "she cannot hold down a full-time job"). It also raises concerns

that the ALJ is substituting her own judgment for that of trained medical professionals. *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *see also Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

Dr. Shaaban's records also include multiple Global Assessment of Functioning scores ranging from 45 to 56, all of which the ALJ gave "little weight" because they were "opinions." AR 25. Although a GAF is a "snapshot" of functioning and is not determinative of disability, s*ee Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), a GAF of 50 is a score that indicates serious limitations. *See, e.g.*, *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 693 (7th Cir. 2016) (*O'Connor-Spinner II*) ("[Plaintiff]'s GAF score once again was recorded as 50, indicating serious symptoms or functional impairments."); *Campbell v. Astrue*, 627 F.3d 299, 306-07 (7th Cir. 2010) ("A GAF rating of 50 does not represent functioning within normal limits. Nor does it support a conclusion that [the plaintiff] was mentally capable of sustaining work."). Furthermore, it is logically inconsistent for the ALJ to conclude that Dr. Shaaban's treatment notes do not support the findings in his medical source statement while at the same time explicitly dismissing anything in the treatment notes that supports Dr. Shaaban's professional conclusions.

Because the ALJ failed to give controlling weight to Plaintiff's treating psychiatrist, she must analyze the following factors to describe what weight to give it: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which

an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also Punzio*, 630 F.3d at 710 ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision."). The ALJ refers generally Dr. Shaaban's specialty, but did not address the length or extent of the treating relationship, or consistency of opinion with those of other examining and treating physicians in the record. This is particularly concerning because the ALJ does mention the opinions of other physicians, but explicitly discounts the portions of their medical records that are consistent with Dr. Shaaban's opinion. In particular, the psychological consultative examiner's assessed Plaintiff's GAF at 56 and opined that Plaintiff's social functioning was below average, and the consultative examiner stated theat Plaintiff had a mild cognitive defect and stated that Plaintiff could only be expected to function at the level of mere day-to-day activity. Furthermore, as Plaintiff argues, the ALJ failed to even mention the opinions of two Agency interviewers, both of whom referred to difficulties with memory and/or mental health. AR 274, 288. *See* SSR 16-3p, 3P2016 WL 1119029, at *5 (Mar. 16, 2016) ("Other evidence that we will consider includes statements from . . . any other sources that might have information about the individual's symptoms, including agency personnel."). It also appears that the ALJ misunderstood or ignored the diagnoses given by other medical professionals. For example, the ALJ mentions that Plaintiff was diagnosed with major depressive disorder. "A diagnosis of 'major depression' means, by definition, that an individual's 'symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.'" *O'Connor-Spinner II*, 832 F.3d 690, 693 (7th Cir. 2016) (quoting AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 356 (4th ed. text revision 2000)). It appears, however, that the ALJ ignored or

misunderstood this diagnosis, despite the fact that it appears repeatedly throughout Plaintiff's medical records. In short, it appears that the ALJ discounted or ignored any evidence that did not support her conclusion. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) ("In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling.") (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996)); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003).

Even assuming that the ALJ's decision to disregard the opinions of all treating and examining physicians in favor of non-examining consultants was not an error, the agency psychological consultants, to whom the ALJ gave "great weight," concluded that Plaintiff suffered from mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence, or pace. However, the ALJ did not incorporate any mental limitations into the RFC. She stated that "the undersigned finds these [mental] conditions to be nonsevere impairments. Therefore, these conditions will not be discussed further." AR 30. The ALJ failed to incorporate Plaintiff's mental impairments into the RFC without sufficient explanation and failed to consider how these mental impairments, even if mild, might interact with Plaintiff's physical impairments. "Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d

473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523; *Golembiewski*, 322 F.3d at 918). Particularly given the severity of Plaintiff's physical impairments, the failure to describe the aggregation of impairments is an error.

Although medical evidence, including that from a treating physician, "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight v. Chater,* 55 F.3d 309, 314 (7th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and his conclusions," *O'Connor-Spinner*, 627 F.3d at 618. The ALJ failed to build that logical bridge in this case. The Court is unable to follow the reasoning behind the ALJ's conclusion that the opinion of treating psychiatrist Dr. Shaaban is inconsistent with his own medical records and unsupported by other evidence in the record, a problem that is particularly concerning given the importance of treating physician opinions on issues of residual functional capacity. Furthermore, although the ALJ's concluded that Plaintiff suffered mild difficulties in social functioning and in concentration, persistence, or pace, there is no logical bridge from that conclusion to the RFC, which includes no such limitations. In short, it appears that the ALJ cherry-picked the record for opinions that supported her ultimate conclusion, but did not adequately include even those opinions into the RFC. On remand, the ALJ is reminded of the directive to give controlling weight to the opinion of a treating specialist, particularly when that specialist opines that Plaintiff is unable to work, if it is supported by other evidence of record. A finding that the opinion is unsupported requires thorough explanation, and all limitations must be incorporated into the RFC, with explanation.

D. <u>VE Testimony</u>

Plaintiff also argues that the ALJ erred by basing her analysis on unreliable VE testimony. When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Youngv. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) ("a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record"); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform. *Kasarsky*, 335 F.3d at 543.

Plaintiff argues his past work of gate guard, as described in the DOT listings, requires maintenance duties that appear to be inconsistent with an RFC restricting Plaintiff to avoiding slippery, wet, or uneven surfaces. Furthermore, Plaintiff was not permitted to describe how he actually performed the job. The ALJ also concluded that Plaintiff would be able to perform the duties of laundry clerk, cashier checker, and general clerk. The VE testified that all three of these jobs would require "more than a little adjustment" from Plaintiff's previous work. However, the ALJ limited Plaintiff to light work and he turned 60 in 2014, so the finding that Plaintiff was capable of making the transition to any of these jobs appears to be inconsistent with the Regulations. 20 C.F.R. § 404.1568(d)(4); § 416.968(d)(4) ("If you are closely approaching retirement age (age 60 or older) and you have a severe impairment(s) that limits you to no more than light work, we will find that you have skills that are transferable to skilled or semiskilled light work only if the light

work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.”)

In this case, new VE testimony will be required after the ALJ appropriately analyzes Plaintiff’s mental health limitations and incorporates them into the RFC. The ALJ is cautioned that she must incorporate all relevant limitations in her questioning of the VE and take into account his age and the regulations that govern vocational determinations.

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff’s Opening Brief [DE 16] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 28th day of March, 2017.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record